**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Larisa Dirkzwager, | ) | **ORDER GRANTING MOTIONS FOR** |
| | ) | **LEAVE TO FILE AMENDED** |
| Plaintiff, | ) | **COMPLAINT AND FOR** |
| | ) | **RECONSIDERATION** |
| vs. | ) | |
| | ) | |
| Archer-Daniels-Midland Company, | ) | |
| | ) | |
| Defendant. | ) | Case No.  1:20-cv-212 |

Before the court are a Motion for Leave to File Amended Complaint and Motion for Reconsideration filed by Plaintiff Larisa Dirkzwager ("Dirkzwager") on July 26, 2021.  For the reasons that follow, the motions are granted.

## I.     BACKGROUND

Dirkzwager initiated the above-captioned action pro se in state district court, claiming that, while employed by Defendant Archer-Daniels-Midland Company ("ADM"), she had been discriminated against and otherwise harassed her because of her age, national origin, and/or sex in violation of the North Dakota Human Rights Act, Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967, as amended. (Doc. No. 1-1).

ADM removed the case to this court on November 16, 2020, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. (Doc. No. 1).  It filed an answer to Dirkzwager's complaint on November 18, 2020. (Doc. No. 2).  The parties subsequently submitted a scheduling and discovery plan for the court's review.

On January 6, 2021, the court held a scheduling conference with the parties by telephone.

1

(Doc. No. 7). That same day it issued an order adopting the parties' scheduling and discovery plan and in so doing it set March 1, 2021, as the deadline for filing motions to amend the pleadings. (Doc. No. 8).

On March 2, 2021, Dirkzwager filed a motion for leave to file an amended complaint that (1) comported with the requirements of Rules 8(a)(2) and 10(b) of the Federal Rules of Civil Procedure, (2) described the factual bases for her claims in greater detail, (3) struck references to and claims for gender and age discrimination in her original complaint, and (4) asserted additional claims pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1985, and the Civil Liberties Act of 1988. (Doc. No. 14).

On May 7, 2021, the court issued an order granting Dirkzwager leave to amend her pleadings to expand upon the factual basis for her existing claims but denying her leave to amend her pleadings to include claims under § 1981, § 1985, and the Civil Liberties Act of 1988. (Doc. No 18).

On May 18, 2021, Dirkzwager filed an Amended Complaint. (Doc. No. 19). On June 14, 2021, ADM filed its Answer. (Doc. No. 25). It also filed an motion to strike certain portions of Dirkzwager's Amended Complaint. (Doc. No. 24). On July 20, 2021, the court granted the motion in part and ordered that paragraphs in Dirkzwager's Amended Complaint pertaining the race, ethnic, gender, and age discrimination be stricken. (Doc. No. 28).

On July 26, 2021, Dirkzwager filed what the court construes as motions requesting the court to reconsider its order May 7, 2021, order and to permit her to further amend her pleadings to include a § 1981 claim. The motions have now been fully briefed and are ripe for the court's consideration.

II.    **APPLICABLE LAW**

Fed. R. Civ. P. 15(a) provides in relevant part that leave to amend the pleadings "shall be freely given when justice so requires."  Notwithstanding the liberality of this general rule, it is generally left to the Court's discretion whether to grant leave to amend the pleadings.  Gamma-10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1255 (8th Cir. 1994).  Unless there is a good reason for denial, such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment, leave to amend is generally granted.  Becker v. Univ. of Nebraska at Omaha, 191 F.3d 904, 908 (8th Cir. 1999) ("Likelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous.").

"With respect to the issue of futility, the test for purposes of Rule 15 is whether the proposed amendment can survive a motion to dismiss, not whether it can survive a motion for summary judgment.  "[W]hen a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion, Fed. R. Civ. P. 12 . . . ." In re Senior Cottages of America, LLC, 482 F.3d 997, 1001 (8th Cir. 2007); see also Zutz v. Nelson, 601 F.3d 842, 850–51 (8th Cir. 2010) ("Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." (internal quotation marks omitted).  The futility inquiry asks "whether the proposed amended complaint states a cause of action under the [Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2009)] pleading standard . . . ." Zutz v. Nelson, 601 F.3d 842 (8th Cir. 2010).  Under this

3

standard, the court must assume all facts alleged in the complaint as true to determine whether those same facts state a plausible claim for relief.  Id.

III.   **DISCUSSION**

A.   **§ 1981**

 Section 1981 prohibits non-governmental discrimination in the making and enforcement of contracts.  See  42 U.S.C. § 1981. Specifically, it provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Id. "Section 1981 has long been construed to 'forbid all 'racial' discrimination in the making of private as well as public contracts.'"  Garang v. Smithfield Farmland Corp., 439 F. Supp. 3d 1073, 1096–97 (N.D. Iowa 2020) (quoting St. Francis Coll. v. Al–Khazraji, 481 U.S. 604, 609 (1987)). "It also protects 'identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.'" Id.  (quoting St. Francis Coll. v. Al–Khazraji, 481 U.S. 604, 609).   It does not, however, protect against discrimination based on one's place of birth or national origin. See Broom v. Saints John Neumann & Maria Goretti Catholic High Sch., 722 F. Supp. 2d 626, 631 (E.D. Pa. 2010) ("Because § 1981 was intended to protect against discrimination based on race, it does not provide a remedy to plaintiffs discriminated against 'solely on the place or nation of [their] origin.' " (alteration in original) (quoting St. Francis Coll., 481 U.S. at 613), and citing Bennun v. Rutgers State Univ., 941 F.2d 154, 172 (3d Cir. 1991)).  Consequently, only if a plaintiff "can prove that he [or she] was subjected to intentional discrimination based on the fact that he [or she] was born [into a particular ethnic group], rather than solely on the place or

4

nation of his origin,...[will she] have made out a case under § 1981." <u>St. Francis Coll.</u>, 481 U.S. at 613.

The court denied Dirkzwager's previous request to amend her pleadings to add a claim under § 1981, opining:

> Here, Dirkzwager does not allege to have been subjected to discrimination or harassment because of her ancestry or ethnic characteristics while employed by defendant. Rather, she alleges that she was subjected to harassment and or discrimination because of her nation of origin (Russia). <u>See e.g.</u>, Doc. No. 14-2, p. 7. As her proposed §1981 claim appears predicated solely upon her national origin as opposed to her national origin *plus* her ethnicity, ancestry, or race, it is unlikely to withstand a Rule 12(b) motion and may therefore be denied on the ground of futility. <u>See</u> <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031 (8th Cir. 2011); <u>see also</u> <u>Soboyede v. KLDiscovery</u>, No. 20CV02196SRNTNL, 2021 WL 1111076, at *3 (D. Minn. Mar. 23, 2021); <u>Mulholland v. Classic Mgmt. Inc.</u>, No. CIV. A. 09-2525, 2010 WL 2470834, at *2 (E.D. Pa. June 14, 2010).

(Doc. No. 18).

In her current motions, Dirkzwager asserts that court erred by construing her proposed claim too narrowly, that § 1981 is not rendered inapplicable by virtue of fact that her ethnicity and nationality are in alignment, and that she was subjected to harassment and discrimination on the basis of her national origin *plus* her ancestry and ethnic characteristics in violation of § 1981 as evidenced by the xenophobic and stereotypical commentary of her co-workers. Attached to her motions is a copy of her proposed amended complaint in which alleges the following in relevant part:

> 15. Plaintiff began working for the above-named Defendant on July 7, 2011, as a lab tech. Beginning on or about February 2013, and continuing till the end of her employment in June 2019, she was subjected to repeated and persistent harassment based on her ethnicity, ancestry and nation of origin (Russia) by co-workers, who made repeated comments about her being Russian in relation to current events, such as the 2014 Russian conflict in the Crimea Peninsula, the foreign interference in the 2016 United States Presidential elections, and the 2017 Russian doping scandal at the Olympics. She constantly heard comments such as, "When will you Russians get

out of Crimea?" and "Did you use doping?" and, whenever the lab computers were down, "Probably Russian hackers." In January 2019, she heard employee Jeff Nelson say to Robby Summers: "F***ing immigrants. You'd think they come to pick strawberries. Next thing you know, they get all the good jobs from us."

16.     At the time of the Russian Olympic track team doping scandal, Jeff Nelson initiated a conversation about Plaintiffs experience coaching the junior rock-climbing team in Russia. He was at the time coaching a softball team at a local college. Plaintiff thought they had common interests, until he asked "So, how much doping have you had to take to become a champion?" Plaintiff asserted that she never used doping in her competitive career and didn't appreciate this innuendo. He laughed and said "What happened to your sense of humor? " Plaintiff insisted that she didn't like the joke. Nelson then asked, "Has it hurt your feelings?" Plaintiff replied, "Yes." Nelson then said, "Then you should fill out this "Hurt Feelings Report." Nelson gave Plaintiff a form that looked very official. Plaintiff even thought it was real, but it was a mocking form which was created to discourage complaints. It included clauses such as, "I am a cry baby;" "I am thin-skinned;" and "I need my mommy." (see Exhibit C)

17.     Plaintiff "fixed" one apparatus by hitting it on the side. Robby Summers said, "Russian way." He referred to the movie Armageddon, where the Russian astronaut fixed the space rocket equipment by hitting it with the big wrench, implying that all Russians are morons without finesse.

18.     Some co-workers at ADM asked Plaintiff if it was true that Russians drink a lot. Plaintiff's response was that many Russians drink as a form of self-medication because they do not have psychiatrists, and there is so much stress living there. As a joke, she said:" I left Russia because I couldn't drink Vodka anymore." Making the joke was a mistake. Robby told Plaintiff," Maybe we should call you Drankzwager." Plaintiff said, "No, you shouldn't." But the insulting nickname stuck with Plaintiff nonetheless.

* * *

19.     In 2016, Plaintiff applied for American citizenship. She was both excited and worried that she wouldn't measure up. She studied American history and civics, and discussed them with anybody she could. One day at ADM, Robby Summers talked to her about being an American citizen, and seemed genuinely interested. However, his questions made Plaintiff more and more uncomfortable as he asked Plaintiffs thoughts about Putin and Russian politics. Finally, Summers said, "No wonder you want to be American. You should be ashamed to be Russian." Summers then looked over Plaintiffs shoulder. When she looked around, she realized that the door was open and that the entire maintenance crew was in the corridor listening to the conversation. It was a coffee break time, and the lunchroom was just across the

6

corridor. Plaintiff now realizes that Summers' feigned interest was a performance to humiliate and shame her about her being Russian.

20.     Each Friday at the ADM facility in Velva, ND, the top management of the plant (Plant Manager, Biodiesel plant Superintendent, Crash Plant Superintendent, Safety Manger, Quality control Lab Supervisor, Shift Supervisor, IT department staff, QC Lab staff, and all engineers) gather for the safety meeting. In one of these meetings, Bryan, the head of the IT department, asked Plaintiff to say "We must kill moose and squirrel." Plaintiff, though confused by the request, didn't expect an ambush in such respected company, so she complied. Everybody laughed, and she assumed it was simply a nice joke. Later, she also didn't suspect anything to be wrong when Bryan asked her to repeat the phrase in the lunch room on coffee break, in front of maintenance and production crew. Plaintiff was only happy to make everybody smile. Those present remarked that they liked her accent. Plaintiff felt betrayed when later she learned that the sentence was the signature phrase of notorious Russian female spy Natasha Fatale from the Rocky and Bullwinkle cartoon. Plaintiff was embarrassed and humiliated that she had been tricked into saying it for the entertainment and amusement of ADM management and staff.

(Doc. No. 31).

In its response to Dirkzwager's motion, ADM asserts that Dirkzwager's request for leave to amend the pleadings is untimely, that Dirkzwager's proposed claim has already been rejected by the court as futile, and that it will be unduly prejudiced should Dirkzwager be permitted to amend her pleadings as it will unnecessarily increase costs and otherwise protract matters.

As the court previously noted, § 1981 does not apply to claims based on national origin. However, given the additional context provided by Dirkzwager in the instant motion, the court cannot conclude at this point that her proposed claim is not predicated at least in part her upon ancestry or ethnic characteristics as opposed to just her national origin. Yes, comments concerning current events that were allegedly directed at Dirkzwager concern her nationality and thus at first blush do not appear to be actionable under § 1981. The same cannot necessarily said about alleged comments or allusions to plaintiff's alcohol consumption or accent, however.  See e.g., Wesley v. Palace Rehabilitation & Care Center, L.L.C., 3 F. Supp.2d 221, 231 (D.N.J. 2014) ("Discrimination

based upon a person's accent may constitute national origin discrimination and/or racial discrimination.  To determine the nature of the discriminatory animus when a plaintiff's accent is at issue, a court must consider the context of the employment action or comments.").

Dirkzwager is endeavoring to assert a hostile work environment claim under § 1981.  "[A] hostile work environment claim is sufficient plead[ed] where the complaint alleges that the plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." Acosta v. City of N.Y., No. 11-CV-0856, 2012 WL 1506954, at * 7 (S.D.N.Y. April 276, 2012) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); Ellis v. Houston, 742 F.3d 307, 319 (8th Cir. 2014).  The hostility must be borne of animus towards the plaintiff as a result of her membership in a protected class.    Ellis v. Houston, 742 F.3d 307, 319.  Race, which encompasses ancestry and ethnic characteristics, is a protected class under § 1981.

Accepting the facts as alleged by Dirkzwager as true for purposes of Rule 15,  the court cannot conclude at this stage that Dirkzwager has not met the lenient pleading standards for a hostile work environment claim.  Consequently, the court is inclined to reconsider its previous order and permit Dirkzwager to amend her pleadings to include a  § 1981 claim.  The court is not persuaded that ADM will unduly prejudiced.  Although this case has been pending for some time, it is still in its preliminary stages and the pretrial deadlines have been stayed pending further order.

## IV.    **CONCLUSION**

Dirkzwager's Motion for Reconsideration and Motion to Amend (Doc. Nos. 29, 30) are **GRANTED**.  Dirkzwager shall have until May 23, 2022, to file a Second Amended Complaint that includes a § 1981 hostile work environment claim.

**IT IS SO ORDERED.**

Dated this 6th day of May, 2022.

/s/ Clare R. Hochhalter
Clare R. Hochhalter, Magistrate Judge
United States District Court